O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

Case No. 2:17-CV-00011(VEB)

MARTIN MEZA,

                Plaintiff,

vs.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

               Defendant.

DECISION AND ORDER

## I. INTRODUCTION

In July of 2014, Plaintiff Martin Meza applied for Supplemental Security Income benefits and Disability Insurance benefits under the Social Security Act. The Commissioner of Social Security denied the applications. Plaintiff, represented by the Law Offices of Martin Taller, APC, Troy Dana Monge, Esq., of counsel,

commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 7, 10). On September 27, 2017, this case was referred to the undersigned pursuant to General Order 05-07. (Docket No. 19).

## II. BACKGROUND

Plaintiff applied for benefits on July 29, 2014, alleging disability beginning July 3, 2013. (T at 202-203, 204-213).[1] The applications were denied initially and on reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On August 29, 2016, a hearing was held before ALJ Michael Radensky. (T at 41). Plaintiff appeared with his attorney and testified with the assistance of a Spanish language interpreter. (T at 48-67, 78-81). The ALJ also received testimony from Miquel Hashimoto, a friend of Plaintiff (T at 69-78), and Gregory Jones, a vocational expert (T at 81-85).

On September 6, 2016, the ALJ issued a written decision denying the applications for benefits. (T at 21-40). The ALJ's decision became the

---

[1] Citations to ("T") refer to the administrative record transcript at Docket No. 14.

DECISION AND ORDER – MEZA v BERRYHILL 2:17-CV-00011-VEB

Commissioner's final decision on November 8, 2016, when the Appeals Council denied Plaintiff's request for review. (T at 1-9).

On January 3, 2017, Plaintiff, acting by and through his counsel, filed this action seeking judicial review of the Commissioner's decision. (Docket No. 1). The Commissioner interposed an Answer on May 17, 2017. (Docket No. 13). The parties filed a Joint Stipulation on September 20, 2017. (Docket No. 18).

After reviewing the pleadings, Joint Stipulation, and administrative record, this Court finds that the Commissioner's decision must be reversed and this matter remanded for calculation of benefits.

## III. DISCUSSION

### A. Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if any impairments are of such severity that he or she is not only unable to do previous work but cannot,

considering his or her age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment(s) with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the

evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work which was performed in the past. If the claimant is able to perform previous work, he or she is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity (RFC) is considered. If the claimant cannot perform past relevant work, the fifth and final step in the process determines whether he or she is able to perform other work in the national economy in view of his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.  Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## C.    Commissioner's Decision

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 3, 2013 (the alleged onset date) and met the insured status requirements of the Social Security Act through December 31, 2017 (the date last insured). (T at 29). The ALJ found that Plaintiff's degenerative disc disease of the lumbar spine and mood disorder were "severe" impairments under the Act. (Tr. 29).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 30).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 416.967 (b), with the following limitations: he cannot climb ladders, ropes, and scaffolds; he can perform only occasional climbing, crouching, balancing, stooping, crawling, and kneeling; he cannot work in environments with exposure to unprotected heights or dangerous machinery; he can perform only non-complex, routine tasks, with no tasks requiring hyper-vigilance, and no work wherein he is responsible for the safety of others. (T at 32).

The ALJ found that Plaintiff could not perform his past relevant work as a machine operator. (T at 33-34). However, considering Plaintiff's age (40 on the alleged onset date), education (limited), work experience, and residual functional capacity, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 34).

As such, the ALJ found that Plaintiff was not entitled to benefits under the Social Security Act from July 3, 2013 (the alleged onset date) through September 6, 2016 (the date of the ALJ's decision). (T at 35). As noted above, the ALJ's decision

DECISION AND ORDER – MEZA v BERRYHILL 2:17-CV-00011-VEB

became the Commissioner's final decision when the Appeals Council denied

Plaintiff's request for review. (T at 1-9).

**D.    Disputed Issues**

As set forth in the parties' Joint Stipulation (Docket No. 18), Plaintiff offers

three (3) main arguments in support of his claim that the Commissioner's decision

should be reversed.  First, Plaintiff challenges the ALJ's credibility determination.

Second, he contends that the ALJ did not adequately address the lay opinion

evidence.   Third, Plaintiff challenges the ALJ's consideration of certain medical

opinion evidence. This Court will address each argument in turn.

<strong>IV. ANALYSIS</strong>

**A.    Credibility**

A claimant's subjective complaints concerning his or her limitations are an

important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d

1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's findings with regard to the

claimant's credibility must be supported by specific cogent reasons. *Rashad v.

Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of

malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General

findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. § 404.1529(b), 416.929; SSR 96-7p.

In this case, Plaintiff testified as follows: He was laid off from his last job. (T at 48). He has pain in both legs, left shoulder, and low back. (T at 53). He can lift very little weight and lifting his left arm is painful. (T at 53-54). Low back pain is constant and severe at times. (T at 56). Medications cause dizziness. (T at 58). He has problems standing, walking, and sitting. (T at 59). He began using a cane approximately eight months before the hearing and cannot walk for more than 35 minutes without the cane. (T at 59). Sitting is limited to about an hour at a time. (T at 60). He lies down for several hours each day due to pain. (T at 60, 85).

Plaintiff testified that he was homeless as of the date of the hearing and bathed himself in the park. (T at 62). He is desperate, sad, has difficulty concentrating, and experiences suicidal ideation. (T at 64-65).

DECISION AND ORDER – MEZA v BERRYHILL 2:17-CV-00011-VEB

The ALJ concluded that Plaintiff's medically determinable impairments could not reasonably be expected to cause the alleged symptoms and that his statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible. (T at 32).

This Court finds that the ALJ's credibility determination is not supported by substantial evidence and cannot be sustained. As a threshold matter, this Court notes that the ALJ's decision proceeds in a rather conversational style. He does not offer sustained analysis or explanation, but rather describes evidence with adjectives and adverbs that suggest he is assessing Plaintiff's credibility (e.g., "[d]ubiously," "somewhat inconsistent," "[n]evertheless," "perhaps more significantly"). (T at 33). In any event, to the extent the ALJ's reasons for discounting Plaintiff's credibility can be discerned, they are insufficient.

The ALJ first finds what he believes to a material inconsistency regarding Plaintiff's use of a cane. When asked about his use of a cane at the administrative hearing, Plaintiff said he began using it "[l]ike eight months ago." (T at 59). Mr. Hashimoto, Plaintiff's friend and lay witness, testified that he could not remember "exactly when [Plaintiff] started" using a case because "to [his] recollection it always seems like [Plaintiff] always had a cane in the last two years that [he'd] known [Plaintiff]." (T at 72). Based on the two-year timeframe estimate provided

by Mr. Hashimoto, the ALJ describes Plaintiff's eight-month estimate as "dubious" and then (apparently) discounts Plaintiff's credibility based on this discrepancy. (T at 33). Even under the deferential standard of review applicable here, this is not a valid reason for discounting Plaintiff's credibility.

The ALJ assumes without explanation that Mr. Hasimoto's estimate regarding Plaintiff's use of a cane is correct. He then further assumes that Plaintiff is, for some reason, "dubiously" *under*estimating the length of time his pain has been severe enough to require the use of a cane to walk. Lastly, the ALJ finds the apparent underestimation to be a reason to doubt Plaintiff's credibility, without explaining why this is the case. (T at 33).

In addition to being inadequately explained, the ALJ's reasoning is flawed. The ALJ accepts Mr. Hashimoto's cane timetable as precisely accurate, even though Mr. Hashimoto stated he could not remember "exactly when" Plaintiff started using a cane, but that it "seemed" as though it had been for two years. (T at 72). Moreover, as between the two, Plaintiff presumably would have a better recollection as to when he started using a cane, especially since Mr. Hashimoto only visited Plaintiff about once a month. (T at 69). Treatment notes describe Plaintiff as needing a cane in November of 2015, about 9 months before the hearing, which tends to support Plaintiff's recollection. (T at 637).

DECISION AND ORDER – MEZA v BERRYHILL 2:17-CV-00011-VEB

If the truth is that Mr. Hashimoto was mistaken in his estimate, which is certainly possible, then this discrepancy is no cause for finding Plaintiff's testimony "dubious." Indeed, in that scenario, Plaintiff's testimony was truthful. The ALJ provides no rationale for accepting Mr. Hashimoto's estimate as accurate.

Moreover, even if Mr. Hashimoto is correct, the ALJ does not explain why Plaintiff's error regarding the cane timetable would be material to the credibility determination. If the estimates were reversed (*i.e.* if Plaintiff said he had been using the cane for longer than Mr. Hashimoto estimated), then it might suggest exaggeration regarding the need for a cane. Instead, it was Plaintiff who may have *under*estimated how long he has needed to use a cane. The ALJ does not explain why or how Plaintiff's possible underestimation of the severity of his symptoms should be considered as negatively impacting his credibility.

The ALJ also finds Plaintiff's testimony regarding alcohol and drug abuse "somewhat inconsistent" and then, presumably, discounts Plaintiff's credibility on that basis. (T at 33). The ALJ stated that Plaintiff "testified that he has never abused drugs or alcohol" and noted that Plaintiff made a similar claim to a consultative examiner in December of 2013. (T at 33). The ALJ contrasted these statements with a statement from March 2015, wherein (according to the ALJ) Plaintiff admitted

DECISION AND ORDER – MEZA v BERRYHILL 2:17-CV-00011-VEB

alcohol abuse about six years prior. (T at 33). The ALJ's recitation of the evidence is inattentive to detail.

None of the evidence cited by the ALJ contains any reference to alcohol or drug *abuse*. In December of 2013, Plaintiff told Dr. Richard Jordan, a consultative examiner, that "he does not smoke cigarettes or drink alcohol." (T at 386). This was reference to his *current* substance use, rather than his past history, a point made clear by the very next sentence in the consultative examiner's report: "He denies *other current* substance use." (T at 386)(emphasis added).

In March 2015, Dr. Sohini Parikh, another consultative examiner, reported that Plaintiff "admitted to drinking alcohol in the past; the last time was 6 years ago." (T at 446). Contrary to the ALJ's conclusion, Plaintiff did not "admit" *abusing* alcohol; he said he consumed it. Moreover, his 2015 statement that he last drank alcohol in 2009 was not inconsistent with his 2013 statement that he was not drinking alcohol at that time.

It is true that during the administrative hearing, when asked whether he had "ever used any drugs or alcohol other than prescription," Plaintiff responded in the negative. (T at 50). On the surface, this contradicts the 2015 report that he had consumed alcohol, with his last use in 2009. (T at 446). However, before discounting Plaintiff's credibility on this count, the ALJ should have at least

DECISION AND ORDER – MEZA v BERRYHILL 2:17-CV-00011-VEB

considered whether the response was caused by an honest misunderstanding of the question – in particular, the possibility that Plaintiff thought he was being asked about *current* drug or alcohol use. This was a plausible possibility, especially given the obvious pressure and nerves a claimant would be expected to experience during a hearing on benefits, and further considering Plaintiff's acknowledged difficulty concentrating (T at 64), limited education (T at 34), and language differences (a Spanish language interpreter assisted during the hearing).

The ALJ also noted that Plaintiff was laid off from his last employment in April of 2013, shortly before the alleged onset date, for what the ALJ described as "non-medical reasons." (T at 33). In general, a claimant's credibility may be discounted if he or she stopped working for reasons unrelated to disability. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). However, here, the evidence indicates that Plaintiff was not laid off based on insufficient effort or some voluntary decision in his part, but was not retained in his position as a machine operator after a training period because he was unable to successfully learn/demonstrate the job skills. (T at 241). Given that the ALJ determined that Plaintiff could not perform his past relevant work, *as a machine operator* (T at 34), there is certainly reason to believe that Plaintiff's loss of employment *was* related to his limitations.

The ALJ also placed significant, perhaps dispositive, weight on comments from Dr. Timothy Ross, a consultative examiner. Dr. Ross reported that "Waddell's signs were found to be extremely positive" and opined that Plaintiff's "subjective complaints outweigh objective findings." (T at 33, 439).

While this Court recognizes the ALJ's responsibility for resolving conflicting opinions and addressing ambiguities in the evidence, the ALJ's explanation here was insufficient and cannot be sustained.

Wadell's signs are "a group of physical signs that may indicate a non-organic or psychological component to low back pain." *See Alagoz v. Colvin*, No. 6:12-CV-00902, 2013 U.S. Dist. LEXIS 84647, at *14-15 (D. Or. June 17, 2013). Some authorities have asserted that three or more "positive" Wadell's signs are suggestive of deliberate deception. *Id.* at 15. Others, including Dr. Wadell himself, have stressed that positive Waddell's signs could be consistent with other impairments, such as fibromyalgia, and are not necessarily indicative of deception or malingering. *Id.*

The ALJ did not acknowledge, or address, this controversy. The ALJ simply referenced and relied on Dr. Ross's statement, which itself is conclusory and non-specific as to what the positive Waddell's signs were. This was improper. *See id.*; *see also Sherman v. Astrue*, No. CV-10-0343, 2012 U.S. Dist. LEXIS 22333, at *17-

18 (E.D. Wash. Feb. 22, 2012)(noting that "the ALJ's determination that plaintiff exaggerated his symptoms based on Waddell signs is an improper use of the Waddell signs"). Moreover, Dr. Richard Jordan, a clinical psychologist, conducted a detailed psychological evaluation and opined that Plaintiff's responses did not "suggest excessive exaggeration or over-reporting of symptoms." (T at 395). While the ALJ certainly had the discretion to find Dr. Ross's suspicion of malingering more persuasive than Dr. Jordan's assessment, he was obliged to explain such a conclusion. Instead, the discrepancy was not even acknowledged.

Lastly, the ALJ recognized that the medical records, including in particular the most recent (and thus, most probative) records reveal "significant abnormalities on MRI examinations," as well as "neurological abnormalities, including decreased sensation and motor strength, as well as some decreased range of motion." (T at 33). A treatment note from August of 2016 reported that Plaintiff was a candidate for back surgery due to severe spinal stenosis, but that surgery could not proceed because Plaintiff, being homeless, had nowhere to recover following discharge from the hospital. (T at 608-609). This evidence, which provided significant support for Plaintiff's subjective complaints, was summarized by the ALJ in a single paragraph, without further explanation or connection to the credibility assessment. (T at 33).

DECISION AND ORDER – MEZA v BERRYHILL 2:17-CV-00011-VEB

Under the circumstances, this Court has no hesitancy concluding that the ALJ's credibility assessment cannot be sustained.

**B.    Lay Evidence**

"Testimony by a lay witness provides an important source of information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness." *Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999).

In the present case, Plaintiff offered the testimony of Miguel Hashimoto. Mr. Hashimoto testified that he visits Plaintiff about once a month and speaks with him on the telephone a couple of times per month. (T at 69-70). He had known Plaintiff for about two years as of the administrative hearing. (T at 70). According to Mr. Hashimoto, Plaintiff's condition had deteriorated over the past six months. (T at 70). Plaintiff is not able to walk distances. (T at 70-71). He moves slowly and is unable to sit through a meal. (T at 71). Plaintiff is homeless and sleeps in a vehicle. (T at 73). He has trouble sitting and getting up from a seated position. (T at 74). His mood is depressed and he has difficulty concentrating. (T at 74). Plaintiff complains of pain in his leg and told his friend that back surgery had been recommended. (T at 77).

DECISION AND ORDER – MEZA v BERRYHILL 2:17-CV-00011-VEB

The ALJ addressed Mr. Hashimoto's testimony in the context of the "cane timetable" issue discussed above. (T at 33). The ALJ also made general reference to the lay testimony by stating that "the statements by [Plaintiff] and his friend concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record …." (T at 32).

The ALJ did not engage in an explicit discussion of Mr. Hashimoto's testimony (beyond the cane timetable question) or provide a specific germane reason or reasons for discounting his statements.

The Ninth Circuit has held that an ALJ's failure to adequately address lay testimony may be harmless where the ALJ validly rejected subjective complaints of the claimant that were substantially the same as the lay testimony. *See Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

Here, by contrast, this Court finds that the ALJ did *not* validly reject Plaintiff's subjective complaints, as discussed above. As such, this Court finds that the ALJ's failure to adequately address Mr. Hashimoto's testimony cannot be considered harmless and this issue provides another reason for remand.

DECISION AND ORDER – MEZA v BERRYHILL 2:17-CV-00011-VEB

## C. Medical Opinion Evidence

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The courts have recognized several types of evidence that may constitute a specific, legitimate reason for discounting a treating or examining physician's medical opinion. For example, an opinion may be discounted if it is contradicted by the medical evidence, inconsistent with a conservative treatment history, and/or is based primarily upon the claimant's subjective complaints, as opposed to clinical findings and objective observations. *See Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995).

### 1.    Dr. Jordan & Dr. Ramirez

Dr. Richard Jordan, a clinical psychologist, completed an initial psychological comprehensive evaluation in December of 2013.  Dr. Jordan diagnosed adjustment disorder with mixed anxiety and depressed mood. (T at 396).  He assigned a Global Assessment of Functioning ("GAF") score[2] of 55 (T at 396), which is indicative of moderate symptoms or difficulty in social, occupational or educational functioning. *Metcalfe v. Astrue*, No. EDCV 07-1039, 2008 US. Dist. LEXIS 83095, at *9 (Cal. CD Sep't 29, 2008).

Dr. Jordan opined that Plaintiff was "temporarily totally psychologically disabled." (T at 397).  He believed Plaintiff was experiencing "significant emotional distress," which "seriously interfered with some, but not all, major life and personal functions." (T at 397).  Dr. Jordan stated that Plaintiff's concerns about his ability to resume his work duties were "valid" and that he was "incapable of performing his work-related duties and responsibilities satisfactorily." (T at 397).  Dr. Jordan opined that Plaintiff's responses to testing did not "suggest excessive exaggeration or over-reporting of symptoms." (T at 395).

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

DECISION AND ORDER – MEZA v BERRYHILL 2:17-CV-00011-VEB

In August of 2016, Dr. Ricardo Ramirez, a treating psychiatrist, noted Plaintiff's diagnosis of "major depressive disorder, severe with psychosis." (T at 611).

The ALJ concluded that Plaintiff had moderate limitation with regard to concentration, persistence or pace. (T at 31). In making this finding, the ALJ referenced the GAF score assessed by Dr. Jordan (T at 31), but otherwise does not mention Dr. Jordan. It is not clear what weight, if any, the ALJ assigned to Dr. Jordan's assessment of severe, disabling psychological symptoms.

The ALJ found that Plaintiff retained the RFC to perform non-complex, routine tasks, provided he was not required to perform tasks involving hyper-vigilance or work in which he was responsible for the safety of others. (T at 32).

This finding was based in substantial part on a psychiatric consultative examination performed by Dr. Sohini Parikh in March of 2015. Dr. Parikh diagnosed mood disorder due to medical condition and assigned a GAF score of "62 to 67." (T at 449). "A GAF of 61-70 indicates '[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.'" *Tagger v. Astrue*, 536 F. Supp. 2d 1170, 1174 n.8 (C.D. Cal. 2008). Dr. Parikh

DECISION AND ORDER – MEZA v BERRYHILL 2:17-CV-00011-VEB

assessed mild to no impairment with regard to Plaintiff's ability to perform the mental demands of basic work activity. (T at 450).

The ALJ, of course, had the discretion to find Dr. Parikh's assessment more persuasive than Dr. Jordan's. However, the ALJ was obliged to explain why he reached that conclusion, particularly in light of Dr. Jordan's extremely detailed clinical findings (T at 386-98) and Dr. Ramirez's (a treating provider) diagnosis of "major depressive disorder, severe with psychosis." (T at 611). No such explanation was provided.

Moreover, because the ALJ concluded that Plaintiff was moderately impaired with regard to maintaining concentration, persistence or pace (T at 31), he was obliged to translate that limitation into the RFC determination. Given the ALJ's inattention to detail and failure to adequately address Dr. Jordan's assessment, this Court cannot conclude that the non-exertional limitations in the RFC adequately accounted for Plaintiff's moderate impairment with regard to maintaining concentration, persistence, or pace. *See Acevedo v. Berryhill*, 2018 U.S. Dist. LEXIS 10943, at *15-16 (C.D. Cal. Jan. 23, 2018); *Brink v. Comm'r of Soc. Sec.*, 343 Fed. Appx. 211, 212 (9th Cir. 2009).

DECISION AND ORDER – MEZA v BERRYHILL 2:17-CV-00011-VEB

### 2. Dr. Johnson

The records of Dr. David Johnson, a treating orthopedic specialist, document extensive and significant symptoms. Dr. Johnson found decreased range of motion, slightly decreased sensation, motor loss at 4/5, and positive straight leg raising. (T at 307, 313, 317, 322, 332, 342, 352, 357, 362, 366, 371, 375, 456-57, 463-64, 469-70, 476-77, 483-84, 490-91). He consistently opined that Plaintiff was temporarily totally disabled. (T at 310, 313, 319, 323, 329, 333, 339, 343, 349, 353, 359, 368, 377, 461, 467, 474, 481, 488, 495).

The ALJ never mentioned Dr. Johnson's name and failed to address his assessments of temporary total disability. While not necessarily binding on the Commissioner, assessments of temporary total disability by a treating physician are important pieces of evidence that must be appropriately discussed and addressed by the ALJ. *See Jenkins v. Astrue*, 628 F. Supp. 2d 1140, 1144-51 (C.D. Cal. 2009).

The ALJ relied heavily on a December 2014 internal medicine consultative examination and a February 2015 orthopedic consultative examination, which assessed limitations more consistent with the RFC determination. (T at 33). Again, this Court is mindful of the ALJ's discretion to resolve ambiguities in the evidence and weigh conflicting medical opinions, but a rationale must be provided for the resolution. No such rationale was provided here.

DECISION AND ORDER – MEZA v BERRYHILL 2:17-CV-00011-VEB

As such, the ALJ's assessment of the medical opinion evidence cannot be sustained.

**D.    Remand**

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

In contrast, an award of benefits may be directed where the record has been fully developed and where further administrative proceedings would serve no useful purpose. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).   Courts have remanded for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id*. (citing *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989); *Varney v. Sec'y of Health & Human Servs*., 859 F.2d 1396, 1401 (9th Cir.1988)).

DECISION AND ORDER – MEZA v BERRYHILL 2:17-CV-00011-VEB

Here, this Court finds a remand for calculation of benefits is the appropriate remedy. The ALJ failed to provide legally sufficient reasons for rejecting highly probative evidence (including the medical records, Dr. Jordan's assessment, Dr. Johnson's findings, and the testimony of Plaintiff and Mr. Hashimoto). There are no outstanding issues. It is clear from the record that the ALJ would be required to find Plaintiff disabled if the evidence was credited.

The Commissioner argues in conclusory fashion that a remand for further proceedings is the appropriate remedy if this Court were to find the ALJ's decision not supported by substantial evidence. However, it is not clear what purpose such a remand would serve. The Ninth Circuit has held that it is not appropriate to "remand for the purpose of allowing the ALJ to have a mulligan." *Garrison v. Colvin*, 759 F.3d 995, 1012, 1021 (9th Cir. 2014). Indeed, "[a]llowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

# V. ORDERS

IT IS THEREFORE ORDERED that:

Judgment be entered REVERSING the Commissioner's decision and REMANDING this matter for calculation of benefits; and

The Clerk of the Court shall file this Decision and Order, serve copies upon counsel for the parties, and CLOSE this case without prejudice to a timely application for attorneys' fees and costs.

DATED this 14th day of May 2018,

/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – MEZA v BERRYHILL 2:17-CV-00011-VEB